UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00332-MOC

| SHEILA TAYLOR, | ) |  |
| --- | --- | --- |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) | **ORDER** |
| ANDREW M. SAUL, | ) |  |
| **Commissioner of Social Security,** | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

**THIS MATTER** comes before the Court on judicial review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act (the "Act"). Plaintiff filed a Motion for Summary Judgment, requesting reversal and remand for rehearing. (Doc. No. 15). The Commissioner in turn filed a Motion for Summary Judgment, requesting affirmance. (Doc. No. 17). Plaintiff then filed a response opposing the Commissioner's Motion for Summary Judgment. (Doc. No. 19). As explained below, the Court grants Plaintiff's motion, denies the Commissioner's motion, and remands this case to the ALJ for a decision consistent with this Order.

I. **BACKGROUND**

   A. **Administrative Exhaustion**

In September 2016, Plaintiff filed an application for Social Security disability insurance benefits under Title II of the Act, alleging she had been disabled since June 3, 2016, later amending the date of disability onset to August 5, 2017. (Doc. 12-3 at 13). Plaintiff's claims were denied initially and upon reconsideration. (Id.). On January 30, 2019, an administrative law judge (ALJ) held a hearing to consider Plaintiff's claims. (Id. at 1). On March 29, 2019, the ALJ

1

issued a decision, concluding Plaintiff was not disabled within the meaning of the Act. (Id. at 10). The Appeals Council denied Plaintiff's request for review on April 20, 2020, rendering the ALJ's decision final and thus reviewable by this Court. (Id. at 2). Plaintiff has exhausted available administrative remedies, so this case is ripe for judicial review, pursuant to 42 U.S.C. § 405(g).

### B. Sequential Evaluation Process

The Social Security Act states that "an individual shall be considered to be disabled . . . if [s]he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see id. § 423(d)(1)(A). The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that meets or equals a listed impairment in Appendix 1 to Subpart P of 20 C.F.R. § 404, a finding of "disabled" will be made without consideration of vocational factors;

4. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

See 20 C.F.R. §§ 404.1520, 416.920. The claimant "bears the burden of production and proof during the first four steps of the inquiry." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If

2

the claimant carries their burden through the fourth step, the burden shifts to the Commissioner to show other work exists in the national economy that the claimant can perform. See id.

### C. The Administrative Decision

The issue before the ALJ was whether Plaintiff was disabled from August 5, 2017, the amended alleged onset date, to the date of the decision. Using the sequential evaluation process, the ALJ concluded at step five that Plaintiff was not disabled within the meaning of the Act. To begin, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since August 5, 2017. (Doc. No. 12-3 at 16). At step two, the ALJ decided Plaintiff suffered from the following severe impairments: diabetes, neuropathy of the legs and feet, chronic obstructive pulmonary disease, depression/bipolar disorder, history of cocaine use, and alcoholism-in-remission approximately one year. (Id.). At step three, the ALJ decided she did not have an impairment or combination of impairments that met or equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Id. at 18).

Before turning to step four, the ALJ found Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(c), except she must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Id. at 23). Additionally, the ALJ restricted Plaintiff to "simple, routine tasks." (Id.).

At step four, the ALJ determined that Plaintiff had no past relevant work. (Id. at 31). At step five, based on Plaintiff's age, education, work experience, and residual functional capacity, the ALJ concluded there were jobs that exist in significant numbers in the national economy that she could perform including: small parts assembler, electronics worker, and counter clerk. (Id. at 31–32). Because such work existed, the ALJ held that Plaintiff was not disabled under the Act. (Id. at 32).

## II. DISCUSSION

In considering cross-motions for summary judgment, this Court "examines each motion separately, employing the familiar standard" provided by Federal Rule of Civil Procedure 56. Desmond v. PNGI Charles Town Gaming, 630 F.3d 351, 354 (4th Cir. 2011). Thus, each motion is reviewed "on its own merits 'to determine whether either of the parties deserve judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

When reviewing a disability determination, the Court "is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Courts do not conduct *de novo* review of the evidence. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). Instead, our inquiry is limited to whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla evidence but may be less than a preponderance." Id. The Court will not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Id. (alterations omitted). Put simply, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (alterations omitted).

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Thus, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Id. If the Court has "no way of evaluating the basis for the ALJ's decision, 'the proper course, except in rare

4

circumstances, is to remand to the agency for additional investigation or explanation.'" Id. (quoting Florida Power & Light v. Lorion, 470 U.S. 729, 744 (1985)); see Brown v. Colvin, 639 F. App'x 921, 922 (4th Cir. 2016) (explaining courts do not "min[e] facts from the [administrative] record to support the ALJ's decisions"). This ensures the ALJ can "adequately explain his reasoning . . . in the first instance." Radford, 734 F.3d at 296.

Here, Plaintiff alleges three primary reasons the Court should remand this case to the ALJ for reconsideration. First, Plaintiff contends that the ALJ erred by failing to take into account objective medical evidence that Plaintiff had atrophied legs and a non-healing foot ulcer when determining Plaintiff's RFC. (Doc. No. 16 at 10). Second, Plaintiff contends the ALJ erred in law by not analyzing "the only functional opinion in the record from any treating or examining doctor" under the proper six-factor analysis. (Id. at 11–14). Finally, Plaintiff contends the ALJ erred in law by not considering Plaintiffs occupational base when choosing its grid rule. (Id. at 14). The Court agrees with Plaintiff's first and third argument but rejects the second contention.

**A. Medical Evidence**

Plaintiff argues that the ALJ erred by failing to "explain how Taylor could stand and walk six hours every day with her atrophied legs and non-healing foot ulcer[.]" (Doc. No. 16 at 9). An ALJ "has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (citation omitted).

The Commissioner is correct that the ALJ is "not required to discuss each and every piece of evidence." (Doc. No. 18 at 8); See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865–66 (4th Cir. 2014). However, in the face of conflicting evidence the law requires the ALJ to resolve

the conflict if the evidence in conflict is essential to building the logical bridge from the evidence to the ALJ's final decision. Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 479 (3d Cir. 2007) ("Furthermore, where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination."); Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions"); Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir. 2005) ("inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand"). Contra Miller v. Barnhart, 194 F. App'x 519, 522 (10th Cir. 2006) (no error found where evidence which was not mentioned by the ALJ did not conflict with the ALJ's findings).

Here, Plaintiff complains that the ALJ erred by failing to account for "objective medical evidence" with regards to Plaintiff's leg atrophy and foot ulcer.

### i. ALJ's finding surrounding leg atrophy.

In Plaintiff's December 30, 2016, examination, Dr. Bolz wrote that Plaintiff had "atrophy of leg muscles." (Doc. No. 12-8 at 188). Dr. Bolz also wrote that Plaintiff's legs were "spindly, probably secondary to alcoholic liver failure." (Id. at 452). The ALJ stated that the record "failed to reveal any noted atrophy[.]" (Doc. No. 12-3 at 17). The ALJ further noted that "exams in the Midland and Novant outpatient records otherwise revealed . . . no noted atrophy[.]" (Doc. No. 12-3 at 26). The ALJ also said that "a physical consultive exam in December 2016 revealed . . . no noted atrophy." (Id.).

The ALJ failed entirely to mention the existence of the finding that Plaintiff had leg atrophy. The ALJ states that Exhibit 6F, Dr. Bolz's physical consultive examination, contains findings including "no noted atrophy." This is clearly wrong, as Dr. Bolz wrote "atrophy of leg

6

muscles" on that same report. (Doc. No. 12-8 at 188). Thus, remand is especially warranted here, where rather than rejecting conflicting evidence, the ALJ wholly mischaracterized a medical report.

In short, the ALJ was required to build an accurate and logical bridge from the evidence to his conclusion regarding the RFC. But by failing to address the evidence in the record related to Plaintiff's leg atrophy, there is a gap in the bridge that renders it impassable. Because the ALJ failed to adequately explain why Plaintiff's leg atrophy did not translate into an RFC limitation, Plaintiff's claim must be remanded so the ALJ can either reverse his earlier decision or explain why Plaintiff's disabilities do not result in a limitation of her RFC.

### ii. ALJ's finding surrounding toe ulcer.

The ALJ noted, "These records further document exam findings of a 'chronic-appearing' ulcer of the left toe," as well as "outpatient records from the Novant Health System (Novant outpatient), which are dated from 2016 to 2018, document exam findings of . . . a left lateral foot ulceration[.]" (Doc. No. 12-3 at 25–26). The ALJ did make note of Plaintiff's recurring ulcer, saying that Plaintiff had "an ulcer on her big left toe with a history of infection[.]" (Doc. No. 12-3 at 16). The ALJ also later made note of "exam findings of a 'chronic-appearing' ulcer of the left toe" as well as "skin cracking of the first left toe[.]" (Id. at 25). The Commissioner states that the "ALJ acknowledged that an examination record at Novant Health System did find a swollen left leg with restricted ambulation on May 31, 2018, which resulted from the aforesaid left big toe (hallux) ulcer," but goes on to say that "the ALJ noted this hallux ulcer was a temporary condition[.]" (Doc. No. 18 at 9).

Unlike the leg atrophy, the ALJ noted the reports of the toe ulcer and discussed them fully. As such, under the substantial evidence standard, the ALJ's findings regarding the toe ulcer stand.

**B. Proper Analysis of Dr. Bolz's Opinion**

Plaintiff argues that the ALJ erred by (1) failing to explain how the medical opinions of Dr. Everett Bolz, Plaintiff's examining physician, were unsupported by medical findings and (2) by failing to analyze Dr. Bolz's opinion with the proper "six-factor" analysis. (Doc. No. 16 at 9). When making a disability decision, the ALJ must "always consider the medical opinions in [a] case." 20 C.F.R. §§ 404.1527(b), 416.927(b). This includes the medical opinions of non-treating and non-examining physicians. See 20 C.F.R. §§ 404.1527(c), 416.927(c); see e.g., Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017); Smith, 795 F.2d at 346.

Generally, more weight should be accorded to medical opinions from examining sources than non-examining sources and more weight to medical opinions from treating sources than non-treating sources. Benfield v. Saul, 827 F. App'x 297, 302 (4th Cir. 2020). However, the medical opinions of non-treating and non-examining physicians must also be considered. See 20 C.F.R. §§ 404.1527(c), 416.927(c); see e.g., Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017); Smith, 795 F.2d at 346. Generally, the ALJ gives "controlling weight" to the medical opinion of a treating physician. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Courts typically accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." Fox v. Colvin, 632 F. App'x 750, 756 (4th Cir. 2015) (quoting Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006)) (internal quotation marks omitted). But, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be

8

accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) see also Pittman v. Massanari, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001) (noting Craig was superseded by subsequent regulation but finding its holding consistent with those regulations).

Where a treating physician's medical opinion is not afforded controlling weight, the ALJ must consider all of the following six factors in deciding the weight to give any medical opinion: (1) the examining relationship, (2) the nature, extent, frequency, and length of treatment relationship, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record as a whole, (5) whether the physician is a specialist, and (6) other factors which tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1527(c). When the ALJ ultimately weighs the evidence, he "must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (internal quotations omitted); see Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017).

Here, Plaintiff contends that Dr. Bolz's opinion should be given controlling weight as "the only functional opinion," and may only be disregarded via a six-factor test which is "mandatory." Plaintiff is correct that a treating physician is to be given controlling weight in the absence of substantial evidence to the contrary or medically unacceptable techniques, and if the ALJ determines the treating physician is not to be given controlling weight, the six-factor test must be used to determine what weight to give the treating physician.

However, Dr. Bolz is not a treating physician; he is a physical consultative examiner. There is controlling weight given to Plaintiff's treating physicians throughout the entire opinion. Furthermore, the ALJ discusses findings from Plaintiff's treating physicians as facts. The ALJ does not discount any opinions in the medical record other than those provided by the State

agency medical consultant and the physical consultative examiner. (See Doc. No. 12-3 at 29–30). These medical examiners who are generally given less weight than treating physicians. Benfield, 827 F. App'x at 302. Because Plaintiff has records from various treating physicians (such as exhibits 1F, 11F, 12F, 14F, 15F, 19F, 20F, and 21F) there is no need to give "controlling weight" to the opinions of consultative examiners or utilize the six-factor analysis.

Even though he was not required to do so, the ALJ considered each of the six factors in weighing Dr. Bolz's opinion. First, the ALJ considered the examining relationship by discussing Dr. Bolz's role as a physical consultative examiner. Second, the ALJ considered the nature, extent, frequency, and length of the treatment relationship, by stating that it consisted of a single physical consultative exam. Third, the ALJ considered the supportability of the physician's opinion, taking into consideration each of Dr. Bolz's findings, other than that of leg atrophy, as the Court has already discussed. Fourth, the ALJ considered the consistency of the opinion with the record as a whole, concluding that "the record failed to reveal that the claimant was as limited as Dr. Bolz otherwise opined." Fifth, the ALJ considered whether the physician is a specialist, noting that Dr. Bolz is a physical consultative examiner. Finally, the ALJ did not note other factors which tended to contradict or support the medical opinion. In short, the ALJ properly considered Dr. Bolz's medical opinion.

### C. Occupational Base

Finally, Plaintiff argues that the ALJ's decision must be reversed or remanded because the ALJ failed to properly analyze what occupations are available given Plaintiff's impairments. Plaintiff contends that the more appropriate "occupational base" of jobs available to Plaintiff is the "sedentary" base—which has roughly 200 unskilled occupations—and not the "light" base chosen by the ALJ—which has roughly 1600 unskilled observations. (Doc. No. 10 at 14-15).

Plaintiff contends that the ALJ improperly determined her occupational base by determining her exertional base, then determining whether her nonexertional limitations allowed her to do sufficient work in her exertional base. Id. Plaintiff reasons that her occupational base is less than the "full range" of light work. Id. Plaintiff contends that in such a case, the ALJ's job is to determine which occupational base fits better due to her limitations, rather than deciding if she may remain in her exertionally determined base despite her limitations. Id. Plaintiff states this must be done because a finding of a sedentary rather than a light base would necessitate a finding of disability. Id.

Plaintiff and Defendant agree that SSR 83-14 applies here. (Doc. No. 19 at 2-3; Doc. No. 18 at 13). SSR 83-14 "provide[s] a framework for decisions concerning persons who have both a severe exertional impairment and a nonexertional limitation or restriction." SSR 83-14 (S.S.A. 1983). "Where nonexertional limitations or restrictions within the light work category are between the examples above, a decisionmaker will often require the assistance of a [vocational specialist]." Id.

The ALJ found Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567(c), except she must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Doc. No. 12-3 at 23). Additionally, the ALJ restricted Plaintiff to "simple, routine tasks." (Id.). The ALJ consulted a vocational expert to determine Plaintiff's ability to perform various occupations contained in the "light work" category, and the vocational expert testified that three "representative occupations" consisting of 329,000 jobs in total existed that Plaintiff could perform. (Id. at 32).

"[I]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." Hines v. Barnhart, 453 F.3d 559, 566

(4th Cir. 2006) (quoting Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)). Here, the Court has already found that the ALJ did not consider all of the evidence in the record with regard to Dr. Bolz's finding of leg atrophy. Therefore, the vocational expert's opinion was not based on the proper evidence to determine what jobs are available in the national economy.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment, (Doc. No. 9), is **GRANTED**, and the Commissioner's Motion for Summary Judgment, (Doc. No. 20), is **DENIED**. Pursuant to the power of this Court to enter a judgment affirming, modifying, or reversing the decision of the Commissioner under 42 U.S.C. § 405(g), the ALJ's final decision is **REMANDED** for reconsideration consistent with this Order.

Signed: July 14, 2021

Max O. Cogburn Jr
United States District Judge